**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **YENFIZO YOISE TOVAR BARRETO,**<br><br>***Petitioner*,**<br>**v.**<br><br>**MARY DE ANDA-YBARRA,**<br>*in her official capacity as Field Office Director of Enforcement and Removal Operations, El Paso Field Office, Immigration and Customs Enforcement*;<br>**WARDEN OF ERO EL PASO CAMP EAST MONTANA;**<br>**DAVID J. VENTURELLA,**<br>*in his official capacity as Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement*;<br>**MARKWAYNE MULLIN,**<br>*in his official capacity as Secretary of the U.S. Department of Homeland Security*; **and**<br>**TODD BLANCHE,**<br>*in his official capacity as U.S. Attorney General*,<br><br>***Respondents*.** | § | **EP-26-CV-01734-DCG** |

**ORDER**

*Pro se* Petitioner Yenfizo Yoise Tovar Barreto has filed a Petition for a Writ of Habeas Corpus challenging the legality of his ongoing detention by immigration authorities.[1] The Court

[1] Pet., ECF No. 1.

construes the Petition to raise several statutory and constitutional claims,[2] including a claim under the Due Process Clause.[3]

While this case was pending, the Fifth Circuit released its *en banc* opinion in *Sosnava Rodriguez v. Vergara*, which holds that immigration detainees who are not yet subject to a final order of removal have no due process right to a bond hearing.[4] Although *Sosnava Rodriguez* limits the availability of due-process-based relief for pre-final-removal-order detainees, the opinion suggests that such a claim might remain viable in the following circumstances:

(1) when the Government "continues to detain an alien after it becomes clear that removal is only a remote possibility," such that "detention no longer serve[s] its immigration purpose;"[5]

(2) when the Government "delay[s] removal merely as a means of punishment;"[6]

---

[2] *See id.* at 11–12, 15–19.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[3] *See id.* at 11–12.

[4] *See generally* --- F.4th ----, 2026 WL 3181188 (5th Cir. Oct. 23, 2026) (en banc).

[5] *Id.* at *13; *see also id.* ("[S]o long as removal remains a viable prospect, continued detention, or renewed detention in the case of an alien previously released, does not violate due process."); *id.* (favorably citing a case suggesting that the Government may detain an alien without a final removal order "for over a year" so long as "deportation remain[s] a possibility" (citation modified)); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting that immigration detention must "bear[] a reasonable relation to the purpose for which the individual was committed" (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)) (citation modified)).

[6] *Sosnava Rodriguez*, 2026 WL 3181188, at *13 (citing *Wong Wing v. United States*, 163 U.S. 228, 235, 237 (1896)).

(3) when the Government initiates and pursues removal proceedings "as a façade to incarcerate [the petitioner] for . . . reasons" other than enforcing the nation's immigration laws;[7] or

(4) when the Government hasn't given the alien an opportunity to present "factual questions relevant to whether" the alien is "clearly and beyond a doubt entitled to be admitted" (which would permit the alien to avoid mandatory detention under 8 U.S.C. § 1225(b)(2)(A)).[8]

In light of that new analytical framework, the Court **ORDERS** the Government to **FILE** a document answering the following questions by **November 20, 2026**:

(1) Is Petitioner still in the Government's custody? If not, attach documentation substantiating that the Government removed or released Petitioner (or otherwise no longer has Petitioner in its custody) so that the Court can assess whether this case is moot.

(2) Has an Immigration Judge issued a removal order against Petitioner? If so:

(a) is that removal order final; and

(b) when did it become final?[9]

(3) Assuming that Petitioner is not yet subject to a final order of removal, how long has Petitioner been in detention?

---

[7] *Id.*; *see also Demore v. Kim*, 538 U.S. 510, 532–33 (2003) (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the [Government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.").

[8] *Sosnava Rodriguez*, 2026 WL 3181188, at *14; *see also* 8 U.S.C. § 1225(b)(2)(A) (providing (with certain exceptions) that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for" removal proceedings); *Sosnava Rodriguez*, 2026 WL 3181188, at *7 (emphasizing that the petitioners in *Sosnava Rodriguez* did "not assert that the process they received was insufficient to prove that they [were] 'entitled to be admitted'" so as to avoid mandatory detention under § 1225(b)(2)(A)).

[9] If the Government has issued a final removal order, a different legal framework would apply. *See generally Zadvydas*, 533 U.S. 678 (articulating time limits on *post*-removal-order detention); *see also Sosnava Rodriguez*, 2026 WL 3181188, at *12 (distinguishing *Zadvydas* on the ground that it involved "post-removal order detention" rather than "detention *pending* removal").

(4) Is removal still a viable prospect in this case? Explain why (or why not).[10]

(5) If Petitioner is not yet subject to a final order of removal, explain:

(a) the current status of Petitioner's Immigration Court proceedings; and

(b) the reason(s) for any past or anticipated future delays in those proceedings (including, if applicable, any delays in appellate proceedings before the Board of Immigration Appeals).

(6) Is the Government detaining and pursuing removal proceedings against Petitioner for a bona-fide immigration purpose (as opposed to a punitive or pretextual purpose)?[11]

(7) Because the petitioners in *Sosnava Rodriguez* had "never been admitted to the United States," the Fifth Circuit concluded that "due process d[id] not entitle them to additional proceedings beyond what Congress has provided before they [could] be detained pending removal."[12]

The Fifth Circuit suggested, however, that if the petitioners in *Sosnava Rodriguez* <u>*had*</u> been lawfully admitted to the United States, that could potentially affect the constitutional interests at stake.[13]

---

[10] *See supra* note 5 and accompanying text.

[11] *See supra* notes 6–7 and accompanying text.

[12] *Sosnava Rodriguez*, 2026 WL 3181188, at *5.

[13] *See id.* at *12 ("[The Supreme] Court in *Zadvydas* gave weight to the fact that the petitioners there were *admitted* to the United States but subsequently ordered removed. In observing that indefinite detention of such aliens would raise constitutional concerns, it distinguished aliens who had not gained initial admission to this country, noting that such circumstances would present a very different question. As such, the constitutional concerns addressed in *Zadvydas* differ markedly from those presented here, given that § 1225(b)(2)(A) applies to applicants for admission who have *not* been admitted to the United States." (citation modified)).

Here, the Court understands Petitioner to be claiming that the Government lawfully admitted him to the United States on September 3, 2023.[14] Respondents, however, assert that the Government removed Petitioner from the country pursuant to an Order of Removal on July 29, 2023, and prohibited him from returning for five years.[15] Respondents thus claim that the Government merely *paroled* Petitioner into the United States on September 3, 2023[16]—and, as such, did not lawfully admit him into the country on that date.[17]

(a) Which side's version of the facts is accurate?

(b) If the Government is correct that it didn't lawfully admit Petitioner into the United States when it paroled him into the country on September 3, 2023, does Petitioner's parole status affect how *Sosnava Rodriguez* might apply in this case?

(c) Did Petitioner's entry into the United States on September 3, 2023 reinstate the removal order that the Government entered against him on July 24, 2023?[18]

In other words, when the Government paroled Petitioner into the United States on September 3, 2023, did that amount to Petitioner "reenter[ing] the United States *illegally* after having been removed . . . under an order of removal?"[19]

---

[14] Pet. at 5 ("Getting into the U.S. through Brownsville, Texas *I was admitted* into several Inspections from the Immigration officials and they granted me parole and the application of I94 *introduced legally into the United States*." (emphases added) (errors in original)).

[15] Resp., ECF No. 8, at 10; *see also* Removal Order, ECF No. 8-3, at 2; Verification Removal, ECF No. 8-3, at 1.

[16] Resp. at 10.

[17] *See* 8 U.S.C. § 1182(d)(5)(A) (providing that although the Government may parole certain aliens into the United States "for urgent humanitarian reasons or significant public benefit," such parole "shall *not be regarded as an admission* of the alien" (emphasis added)); *see also* Resp. at 24 ("Petitioner's entry and presence in the United States has been unlawful. The moment of entry into the United States constituted a criminal act . . . .")

[18] *See* 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed . . . ."); *see also* Removal Order at 2.

[19] *See* 8 U.S.C. § 1231(a)(5) (emphasis added).

(d) If Petitioner's prior removal order was reinstated when he reentered the United States on September 3, 2023, would that mean that the Government in fact detaining Petitioner under 8 U.S.C. § 1231(a) (rather than § 1225(b)(2)(A)),[20] such that the legal framework set forth in *Zadvydas v. Davis* would govern this case (as opposed to the framework in *Sosnava Rodriguez*)?[21]

(8) Does *Sosnava Rodriguez* have any bearing on Petitioner's other statutory and constitutional claims?[22]

Petitioner **MAY** respond to the Government's filing by **December 4, 2026**. Besides addressing the points in the Government's filing (including any factual allegations in that filing that Petitioner disputes), Petitioner may address any other arguments or grounds for relief that Petitioner believes are available under existing law.

The Court respectfully **REMINDS** the parties of their obligation to promptly inform the Court if any of the intervening developments listed in the undersigned Judge's "Standing Order to Provide Status Updates in Immigration Habeas Cases" occur while this case is pending.[23]

---

[20] *Contrast* 8 U.S.C. § 1231(a)(1) (governing the detention of aliens who have been "ordered removed"), *with id.* § 1225(b)(2)(A) (governing the detention of "an alien who is an applicant for admission"). *See also Johnson v. Guzman Chavez*, 594 U.S. 523, 533 (2021) (holding that Section 1231 governs detention of noncitizens who have reinstated removal orders).

[21] *See supra* note 9; *see also, e.g.*, *Castaneda v. Perry*, 95 F.4th 750, 753, 755–58 (4th Cir. 2024) (applying *Zadvydas* and Section 1231 to an immigration habeas petitioner with a reinstated removal order).

[22] *See* Pet. at 15–19; *see also supra* note 2 and accompanying text.

[23] *See* Standing Order, ECF No. 2, at 2.

The Clerk of Court **SHALL MAIL** this Order to:

Yenfizo Yoise Tovar Barreto
El Paso Service Processing Center
8915 Montana Avenue
El Paso, TX 79925

Just in case the Government relocates Petitioner to another facility while this mailing is in transit, the Clerk of Court **SHALL ALSO MAIL** this Order to:

Yenfizo Yoise Tovar Barreto
ERO El Paso Camp East Montana
6920 Digital Road
El Paso, TX 79936

**So ORDERED and SIGNED this 6th day of November 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**